IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BLUE SPIKE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 17-928 (LPS) |
| | ) | |
| ROKU, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**OPENING BRIEF IN SUPPORT OF DEFENDANT ROKU, INC.'S MOTION
FOR JUDGMENT ON THE PLEADINGS UNDER RULE 12(c)
OF THE FEDERAL RULES OF CIVIL PROCEDURE**

Morris, Nichols, Arsht & Tunnell LLP
Jack B. Blumenfeld (#1014)
Stephen J. Kraftschik (#5623)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
skraftschik@mnat.com

*Attorneys for Defendant*

OF COUNSEL:

Andrew Thomases
Carolyn L. Redding
Ropes & Gray LLP
1900 University Avenue, Sixth Floor
East Palo Alto, CA  94303
(650) 617-4000

Michael Gershoni
Ropes & Gray LLP
2099 Pennsylvania Avenue, NW
Washington, DC 20006-6807
(202) 508-4600

January 24, 2018

# TABLE OF CONTENTS

**Page**

I.    NATURE AND STAGE OF THE PROCEEDING .......................................................... 1

II.   SUMMARY OF THE ARGUMENT ............................................................................ 1

III.  STATEMENT OF  FACTS .......................................................................................... 3

IV.  ARGUMENT ............................................................................................................... 4

      A.    Legal Standard .................................................................................................. 4

      B.    Blue Spike's Incomplete and Conclusory Allegations of Direct
            Infringement Fail to Meet the Heightened Pleading Standards of Twombly
            and Iqbal.......................................................................................................... 6

            1.    Blue Spike Fails to Allege that the Accused Products Perform Each
                   Limitation of Each of the Asserted Claims of the Secure Server
                   Patents (Counts 1-3) ........................................................................... 6

            2.    Blue Spike Fails to Allege that the Accused Products Perform Each
                   Limitation of Each of the Asserted Claims of the Steganographic
                   Cipher Patents (Counts 4-5) .............................................................. 12

      C.    Blue Spike Fails to Plead Facts that Plausibly Show that the Accused
            Roku Products Indirectly Infringe Any of the Asserted Patents .......................... 16

      D.    Blue Spike Fails to Plead Facts that Plausibly Show that the Accused
            Products Willfully Infringe Any of the Asserted Patents ..................................... 17

V.   CONCLUSION.......................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aeritas, LLC v. Alaska Air Grp., Inc.*, 893 F.Supp.2d 680 (D. Del. 2012) ..................................17

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .............................................................................................. *passim*

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .............................................................................................. *passim*

*Davis v. Abington Mem'l Hosp.*,
    765 F.3d 236 (3d Cir. 2014) ................................................................................................5

*e.Ditigal Corp. v. iBaby Labs, Inc.*
    No. 15-cv-05790-JST, 2016 WL 4427209 (N.D. Cal. Aug. 22, 2016) ......................................5

*Fairchild Semiconductor Corp. v. Power Integrations, Inc.*,
    100 F. Supp. 3d 357 (D. Del. 2015), *reargument denied*, No. CV 12-540-LPS,
    2015 WL 1883960 (D. Del. Apr. 24, 2015) ..................................................................................4

*Fowler v. UPMC Shadyside*,
    578 F.3d 203 (3d Cir. 2009) ...........................................................................................5, 6

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
    136 S. Ct. 1923 (2016) ......................................................................................................18

*Macronix Int'l Co. v. Spansion Inc.*,
    4 F. Supp. 3d 797 (E.D. Va. 2014) ...............................................................................5

*Modern Telecom Sys., LLC v. TCL Corp.*,
    C.A. No. 17-583-LPS-CJB, 2017 WL 6524526 (D. Del. Dec. 21, 2017) ...............5, 6, 17, 18

*North Star Innovations, Inc. v. Micron Technology, Inc.*,
    C.A. No. 17-506, 2017 WL 5501489 (D. Del. 2017) ............................................................11

*Princeton Digital Image Corp. v. Ubisoft Entm't SA*,
    C.A. No. 13-335-LPS-CJB, 2016 WL 6594076 (D. Del. Nov. 4, 2016) ...............................18

*Raindance Techs., Inc. v. 10x Genomics, Inc.*,
    C.A. No. 15-152-RGA, 2016 WL 927143 (D. Del. Mar. 4, 2016) ........................................5, 6

*Telecomm Innovations, LLC v. Ricoh Co., Ltd.*,
    966 F. Supp. 2d 390 (D. Del. 2013) ...............................................................................17

*Valinge Innvocation AB v. Halstead New England Corp., et al.*,
    C.A. No. 16-1082, 2017 WL 5196379 (Nov. 9, 2017) ........................................................6

**Statutes and Rules**

35 U.S.C. § 271 .........................................................................................................................4, 17

Federal Rule of Civil Procedure 8 ............................................................................................1

Federal Rule of Civil Procedure 8(a) ........................................................................................6

Federal Rule of Civil Procedure 12(c) ...................................................................................1, 4

## I.      NATURE AND STAGE OF THE PROCEEDING

Defendant Roku Inc. ("Roku") moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), to dismiss each and every claim of Plaintiff Blue Spike, LLC's ("Blue Spike") Complaint for failure to state a claim upon which relief can be granted.  Blue Spike's Complaint broadly accuses Roku of direct infringement, induced infringement, contributory infringement, and willful infringement of five U.S. Patents.[1]  As detailed below, Blue Spike's conclusory and incomplete allegations of infringement fall far short of the pleading standard set forth in Federal Rule of Civil Procedure 8, as construed by the U.S. Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and should be dismissed.

## II.     SUMMARY OF THE ARGUMENT

The heightened pleading standards of *Twombly* and *Iqbal* require more than conclusory statements and threadbare recitals of the elements of a cause of action.  However, Blue Spike's allegations fail to do even that.  In particular, Blue Spike fails to allege that the Accused Products infringe each element of the asserted claims, and the allegations it does make are conclusory statements that merely parrot the claim language.  Accordingly, Blue Spike's Complaint should be dismissed because its barebones contentions do not plausibly allege direct patent infringement, induced patent infringement, contributory patent infringement, or willful patent infringement.

---

[1] U.S. Patent Nos. 7,475,246 ("the '246 patent"), 8,171,561 ("the '561 patent"), 8,739,295 ("the '295 patent") (collectively, "the Secure Server patents") and U.S. Patent Nos. 7,159,116 ("the '116 patent"), 8,538,011 ("the '011 patent") (collectively, "the Steganographic Cipher patents") (together, "the Asserted Patents").

Regarding direct infringement, for the Secure Server patents, the Complaint broadly contends that the "Accused products allow playback, upon request and proper authorization, of [both] secured [and unsecured] content via Netflix, HBO Go, Pandora, Spotify, and other streaming services." (D.I. 1, ¶¶ 24, 33, 42). The Complaint then merely parrots some, but not all, of the claim limitations without any elaboration or explanation. In doing so, the Complaint fails to identify any rationale for how or why allowing playback from a streaming service "upon request and proper authorization" could plausibly directly infringe any claims of the Secure Server patents. Similarly, for the Steganographic Cipher patents, the Complaint broadly contends that the "Accused Products allow playback of Netflix, Hulu+, HBO Go, Pandora, Spotify, and other streaming services" and "[o]n information and belief, Netflix and Hulu+ use a digital rights management system called PlayReady—among others—which is a method for authenticating the transmission of information between two entities by using unique device IDs and cryptographic keys." (D.I. 1, ¶¶ 51, 60). The Complaint then merely parrots some, but not all, of the claim limitations without any elaboration or explanation. Accordingly, the Complaint fails to identify any rationale for how or why playback from Netflix or Hulu+ (that allegedly use a method for authenticating the transmission of information between two entities by using unique device IDs and cryptographic keys) could plausibly directly infringe the asserted claims of the Steganographic Cipher patents, or why playback from any other streaming service would allegedly infringe.[2] Such threadbare allegations fall far below the heightened pleadings standards of *Twombly* and *Iqbal*.

---

[2] Blue Spike has indicated in other proceedings that it relies on discovery, rather than pre-suit investigation, to attempt to form plausible infringement allegations. *See Blue Spike v. Adobe*, 4:14-cv-01647-YGR (N.D. Cal.) (D.I. 42 at 19:10-21) (Case Management Conf. Tr.) (Ex. 1) ("**THE COURT:** You want their source code so you can tell them what the problem is. **MR. GARTEISER:** No, your honor. *We want the source code to see if there's an issue at all* and

Regarding induced and contributory infringement, Blue Spike's allegations are also insufficient because they only offer formulaic recitations paraphrasing 35 U.S.C. § 271 without meaningful or sufficient factual support and conclusory allegations of Roku's knowledge.

Regarding willful infringement, the Complaint merely alleges that Roku had knowledge of the asserted patents from Blue Spike's filing of its Eastern District of Texas complaint and "[i]n the course of its due diligence and freedom to operate analyses."  (D.I. 1, ¶¶ 28, 37, 46, 55). Such allegations do not plausibly set forth facts of an "egregious" case sufficient to plead willful infringement.

Accordingly, the Complaint has failed to sufficiently state a claim of direct, induced, contributory, and willful infringement, and should be dismissed.

## III.   STATEMENT OF FACTS

Blue Spike is a non-practicing entity that has engaged in a voluminous litigation campaign, filing over 100 lawsuits for patent infringement since 2012.[3]  *See* Ex. 2.  Blue Spike filed a complaint against Roku on February 17, 2017 in the Eastern District of Texas, alleging direct infringement, induced infringement, contributory infringement, and willful infringement of "one or more claims" of seven U.S. patents.[4]  *Blue Spike, LLC v. Roku Inc.*, No. 6-17-cv-00100 (E.D. Tex. Feb. 17, 2017) (D.I. 1).  On May 12, 2017, Blue Spike filed an amended complaint to remove infringement allegations for two of the seven patents (the '569 and '713 patents).  *Id.*

---

whether we spend a lot of litigation money.  We are not asking anyone to pull emails at this stage.  We just want to see if what we think they do, based on information and belief, and what they tell customers, then that's what we want to do.  Otherwise, we are not even sure how you would get around that issue.  We will serve our infringement contentions.  This is more when they come back and try to strike them, or move to compel.  I'm just bringing it up as an issue.")

[3] The median case length for Blue Spike's cases is only 130 days (~4 months).  Ex. 2 at 7.

[4] Blue Spike asserted the same five patents asserted in this case as well as U.S. 5,745,569 ("the '569 patent") and U.S. 8,930,713 ("the '719 patent").

(D.I. 13). On May 26, 2017, Roku filed a motion to dismiss for improper venue. *Id.* (D.I. 14). On July 5, 2017, Roku's motion to dismiss was granted, dismissing Blue Spike's claims "without prejudice to their refiling in a District in which venue is proper." *Id.* (D.I. 17).

On July 11, 2017, Blue Spike filed its Complaint in this action, alleging direct infringement, induced infringement, contributory infringement, and willful infringement of "one or more claims" of the five Asserted Patents by the "Accused Products" (defined as, "including but not limited to, [Roku's] Roku, Roku Express, Roku Express+, Roku Premiere, Roku Premiere+, Roku Ultra, and Roku TV products"). (D.I. 1, ¶¶ 15, 22-28, 31-37, 40-46, 49-54, 58-64). Roku filed an Answer on August 21, 2017. (D.I. 8). On July 11, 2017 (the same day it filed this action), Blue Spike also filed a Motion for Transfer of Actions to the Eastern District of Texas Pursuant to 26 U.S.C. § 1407 for Coordinated and/or Consolidated Pretrial Procedures before the U.S. Judicial Panel on Multidistrict Litigation, listing 14 actions that it sought to transfer and consolidate. (D.I. 5); *In re: Blue Spike, LLC, Patent Litigation*, MDL No. 2794. On October 4, 2017, the Judicial Panel on Multidistrict Litigation denied Blue Spike's motion. (D.I. 11). Pursuant to this Court's December 27, 2017 oral order, a Scheduling Conference is scheduled for February 12, 2018.

Other pertinent facts are set forth in the Argument sections, as appropriate.

## IV.    ARGUMENT

### A.    Legal Standard

"A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), alleging a failure to state a claim upon which relief can be granted, is analyzed under the same standard as a Rule 12(b)(6) motion to dismiss." *Fairchild Semiconductor Corp. v. Power Integrations, Inc.*, 100 F. Supp. 3d 357, 360 (D. Del. 2015) (citing *Turbe v. Gov't of Virgin*

*Islands*, 938 F.2d 427, 428 (3d Cir.1991), *reargument denied*, C.A. No. 12-540-LPS, 2015 WL 1883960 (D. Del. Apr. 24, 2015).

It is well-settled that claims of direct patent infringement are subject to the heightened pleading requirements of *Twombly* and *Iqbal*. *See Modern Telecom Sys., LLC v. TCL Corp.*, C.A. No. 17-583-LPS-CJB, 2017 WL 6524526, at *2 (D. Del. Dec. 21, 2017); *see also Raindance Techs., Inc. v. 10x Genomics, Inc.*, C.A. No. 15-152-RGA, 2016 WL 927143, at *2 (D. Del. Mar. 4, 2016). Under this standard, the court first separates the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions." *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210-11 (3d Cir. 2009)). The court then determines "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

To be plausible, a claim "must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). A complaint that "simply parrot[s] back the words of the claim and stating (without more)" that an Accused Product infringes that claim "is not helpful." *See Modern Telecom,* 2017 WL 6524526, at *3; *Raindance Techs., Inc.*, 2016 WL 927143, at *2-3; *e.Ditigal Corp. v. iBaby Labs, Inc.* Case No. 15-cv-05790-JST, 2016 WL 4427209, at *3-4 (N.D. Cal. Aug. 22, 2016); *see also Macronix Int'l Co. v. Spansion Inc.*, 4 F. Supp. 3d 797, 804 (E.D. Va. 2014) (holding that a complaint that does not contain specific factual allegations but instead "simply alleges that each element of a cited claim is infringed and then parrot[s] the claim language for each element... [] simply does not satisfy the notice and showing requirements of Rule 8(a).").  In other words, a plausible claim must demonstrate the basis for its entitlement to relief "with its facts[.]" *See Fowler*, 578 F.3d at 210.

5

In alleging direct infringement, a Plaintiff must plausibly plead facts that indicate an accused product practices each of the limitations found in an asserted claim.  *See Modern Telecom,* 2017 WL 6524526, at *3; *Valinge Innovation AB v. Halstead New England Corp.,* C.A. No. 16-1082, 2017 WL 5196379, *1 (D. Del. Nov. 9, 2017) ("An adequately pleaded claim for direct infringement of a method claim requires allegations that the alleged infringer 'perform[ed] all the steps of the claimed method, either personally or through another acting under his direction or control.'"); *Raindance*, 2016 WL 927143, at *2-3 (dismissing plaintiff's patent complaint where the claims recited limitations related to "pressure" that the complaint did not address.  After all, "factual allegations that do not permit a court to infer that the accused product infringes each element of at least one claim are not suggestive of infringement—they are merely compatible with infringement." *Raindance*, 2016 WL 927143, at *3, n.5.  Allegations that merely demonstrate compatibility with infringement do not cross the threshold from a speculative claim of relief to a plausible claim of relief, and therefore do not pass muster under *Twombly* and *Iqbal*.  *See id.*

### B.   Blue Spike's Incomplete and Conclusory Allegations of Direct Infringement Fail to Meet the Heightened Pleading Standards of *Twombly* and *Iqbal*

1. Blue Spike Fails to Allege that the Accused Products Perform Each Limitation of Each of the Asserted Claims of the Secure Server Patents (Counts 1-3)

Blue Spike does not plead facts sufficient to state a claim for direct infringement of the Secure Server patents, as the Complaint does not allege, nor does Roku perform, each of the steps of the asserted claims.  In particular, as detailed below, there are several claim limitations for which Blue Spike provided _no_ allegations, and for the others Blue Spike only provided incomplete, conclusory allegations merely parroting the claim language.

In Count 1, Blue Spike alleges the Accused Products infringe claim 17 of the '246 patent by providing only the following conclusory and incomplete allegation:

Defendant's Accused Products allow playback, upon request and proper authorization, of secured content via Netflix, HBO Go, Pandora, Spotify, and other streaming services *(digital content for a consumer; sending message; retrieving a copy of the requested content; transmitting the watermarked content data set; receiving the transmitted watermarked content data set into a Local Content Server (LCS) of the user; extracting at least one watermark; permitting use of the content data set if the LCS determines that it is authorized). See* Exhibit H at p. 4 ("The PlayReady license server authenticates the client and issues a license back to the client"); *see also* Exhibits J & K.

D.I. 1, ¶ 24 (emphasis in original).  As the following table illustrates, the Complaint contains no

allegations of infringement as to several limitations of claim 17:

| Claim 17 of the '246 Patent: | Blue Spike's Allegations: |
|---|---|
| A method for creating a secure environment for <u>digital content for a consumer</u>, comprising the following steps: | "digital content for a consumer" |
| <u>sending a message</u> indicating that a user is requesting a copy of a content data set; | "sending message" |
| <u>retrieving a copy of the requested content</u> data set; | "retrieving a copy of the requested content" |
| embedding at least one robust open watermark into the copy of the requested content data set, said watermark indicating that the copy is authenticated; | **No allegations that Accused Products perform this limitation.** |
| embedding a second watermark into the copy of the requested content data set, said second watermark being created based upon information transmitted by the requesting user; | **No allegations that Accused Products perform this limitation.** |
| <u>transmitting the watermarked content data set</u> to the requesting consumer via an electronic network; | "transmitting the watermarked content data set" |
| <u>receiving the transmitted watermarked content data set into a Local Content Server (LCS) of the user</u>; | "receiving the transmitted watermarked content data set into a Local Content Server (LCS) of the user" |
| <u>extracting at least one watermark</u> from the transmitted watermarked content data set; | "extracting at least one watermark" |

| Claim 17 of the '246 Patent: | Blue Spike's Allegations: |
|---|---|
| permitting use of the content data set if the LCS determines that use is authorized; and | "permitting use of the content data set if the LCS determines that it is authorized" |
| permitting use of the content data set at a predetermined quality level, said predetermined quality level having been set for legacy content if the LCS determines that use is not authorized. | **No allegations that Accused Products perform this limitation.** |

Similarly, in Count 2, Blue Spike alleges the Accused Products infringe claim 9 of the

'561 patent by providing only the following conclusory and incomplete allegation:

> Defendant's Accused Products allow playback of both secured and unsecured content via Netflix, HBO Go, Pandora, Spotify, and other streaming services *(a method for using a local content server with communications port, storage, domain processor, and unique ID; said LCS storing/receiving data sets/content; LCS inspecting data set for watermark and determining … unsecure, secure, legacy; wherein a quality level of legacy means that said first content does not include said watermark).* *See* Exhibit H at p. 4 ("The PlayReady license server authenticates the client and issues a license back to the client"); *see also* Exhibits J & K.

D.I. 1, ¶ 33 (emphasis in original).  As the following table illustrates, the Complaint contains no

allegations of infringement as to several limitations of claim 9:

| Claim 9 of the '561 Patent | Blue Spike's Allegations |
|---|---|
| A method for using a local content server (LCS), said LCS comprising an LCS communications port; an LCS storage unit for storing digital data; an LCS domain processor for processing digital data; and an LCS identification code uniquely associated with said LCS, said method comprising: | "a method for using a local content server with communications port, storage, domain processor, and unique ID" |
| said LCS storing in said LCS storage unit a plurality of rules for processing a data set; | "said LCS storing/receiving data sets/content" |
| said LCS receiving via said communications port a first data set that includes data defining first content; | "said LCS storing/receiving data sets/content" |
| said LCS using said domain processor to determine from inspection of said first data set for a watermark, a first data set status value of said first data set to be at least one of unsecure, secure, and legacy; | "LCS inspecting data set for watermark and determining … unsecure, secure, legacy" |

8

| Claim 9 of the '561 Patent | Blue Spike's Allegations |
|---|---|
| said LCS using said first data set status value to determine which of a set of rules to apply to process | **No allegations that Accused Products perform this limitation.** |
| said first data set prior to storage of a processed second data set resulting from processing of said first data set, in said LCS storage unit; | **No allegations that Accused Products perform this limitation.** |
| <u>said LCS determining</u>, at least in part, from rights associated with a user identification associated with a prompt received by said LCS for said first content, a quality level at which to transmit said first content, wherein <u>said quality level is one of at least unsecure, secure, and legacy;</u> and | "LCS inspecting data set for watermark and determining … unsecure, secure, legacy" |
| <u>wherein a quality level of legacy means that said first content does not include said watermark</u>. | "wherein a quality level of legacy means that said first content does not include said watermark" |

In addition, in Count 3, Blue Spike alleges the Accused Products infringe claim 13 of the

'295 patent by providing only the following conclusory and incomplete allegation:

> Defendant's Accused Products allow playback of both secured and unsecured content via Netflix, HBO Go, Pandora, Spotify, and other streaming services *(a method for using a local content server with communications port, storage, domain processor, and unique ID; said LCS storing/receiving data sets/content; excluding from said first LCS domain said first content when said LCS determines that said first content belongs to said different LCS domain; said LCS domain processor determining, from said first data set, a first data set status value of said first data set to be at least one of unsecure, secure, and legacy).* See Exhibit H at p. 4 ("The PlayReady license server authenticates the client and issues a license back to the client"); *see also* Exhibits J & K.

D.I. 1, ¶ 42 (emphasis in original). As the following table illustrates, the Complaint contains no

allegations of infringement as to several limitations of claim 13:

| Claim 13 of the '295 Patent | Blue Spike's Allegations |
|---|---|
| <u>A method for using a local content server system (LCS), said LCS comprising an LCS communications port</u>; an LCS storage unit for storing digital data in non-transitory form; an LCS domain processor that imposes a plurality of rules and procedures for content being transferred between said LCS and devices | "a method for using a local content server with communications port, storage, domain processor, and unique ID" |

| Claim 13 of the '295 Patent | Blue Spike's Allegations |
|---|---|
| outside said LCS, thereby defining a first LCS domain; and a programmable address module programmed with an LCS identification code uniquely associated with said LCS domain processor; comprising: | |
| storing, in said LCS storage unit, a plurality of rules for processing a data set; | "said LCS storing/receiving data sets/content" |
| receiving, via said LCS communications port, a first data set that includes data defining first content; | "said LCS storing/receiving data sets/content" |
| said LCS determining whether said first content belongs to a different LCS domain than said first LCS domain; | **No allegations that Accused Products perform this limitation.** |
| said LCS excluding from said first LCS domain said first content when said LCS determines that said first content belongs to said different LCS domain; | "excluding from said first LCS domain said first content when said LCS determines that said first content belongs to said different LCS domain" |
| said LCS domain processor determining, from said first data set, a first data set status value of said first data set to be at least one of unsecure, secure, and legacy; | "said LCS domain processor determining, from said first data set, a first data set status value of said first data set to be at least one of unsecure, secure, and legacy" |
| said LCS determining, using said first data set status value, which of a set of rules to apply to process said first data set; and | **No allegations that Accused Products perform this limitation.** |
| said LCS determining, at least in part from rights associated with an identification associated with a prompt received by said LCS for said first content, a quality level at which to transmit said first content, wherein said quality level is one of at least unsecure, secure, and legacy; | **No allegations that Accused Products perform this limitation.** |
| said LCS transmitting said first content at the determined quality level. | **No allegations that Accused Products perform this limitation.** |

For the limitations it does address, Blue Spike's Complaint simply parrots elements of the asserted claims. This is insufficient. Blue Spike's allegations fail to provide plausible facts as to why it asserts that Roku's products infringe each and every limitation of the asserted patents. For example, Blue Spike was required to disclose its view as to why it asserts that the accused Roku products infringe the "quality level" limitations in order to have a Rule 11 basis to bring the infringement claims as to claim 17 of the '246 patent, claim 9 of the '561 patent, and claim

13 of the '295 patent.[5]  *See North Star Innovations, Inc. v. Micron Tech., Inc.*, No. 17-506, 2017 WL 5501489 (D. Del. Nov. 16, 2017) (citing *SIPCO, LLC. v. Streetline, Inc.*, 230 F. Supp. 3d 351, 353 (D. Del. 2017).  As this Court has explained, Blue Spike "needs to pleads facts that say *something* about what that view is—about what the accused product contains that meets these claim limitations (and the others) and that helps the Court understand why it's plausible that this is so."  *Id.*

Nor do Blue Spike's citations to Exhibits H, J, and K support its infringement allegations. These exhibits are not directed at Roku's products or actions, but to third-party content providers and digital rights management (DRM) providers.[6]  Furthermore, information relating to claim limitations such as "watermarking," "determining pre-determined quality levels," "legacy content," and transmitting content at pre-determined quality levels are notably absent from these exhibits.

---

[5] Blue Spike's failure to include allegations and facts to support that the Accused Products meet the "quality level" limitations is particularly problematic because, during prosecution at the Patent Office, the Patent Examiner found this limitation important during the prosecution of the Secure Server patents.  For example, in the July 8, 2008 Statement of Reasons for Allowance for the '246 patent, the Examiner stated: "[n]owhere in the prior art is found, collectively, the *italicized* claim elements (i.e., '*and if the digital content is not authorized for use by the LCS, accepting the digital content at a predetermined quality level, said predetermined quality level having been set for legacy content*'), at the time of the invention; serving to patently distinguish the invention from said prior art[.]").  U.S. Patent App. No. 10/049,101 ('246 patent), July 8, 2008 Examiner's Reasons for Allowance, ¶ 5 (Ex. 3).  The '561 patent is a continuation of the '246 patent, and the '295 patent is a continuation of the '561 patent.

[6] Exhibit H is documentation describing Microsoft's PlayReady, a "content delivery and management solution for entertainment products." (D.I. 1, Ex. H, at 3).  In its Complaint, Blue Spike states: "[t]he PlayReady license server authenticates the client and issues a license back to the client," without stating how or why this statement supports Blue Spike's direct infringement allegation.  *See, e.g.*, D.I. 1, ¶ 4.  Exhibits J and K are also cited with no explanation.  Exhibit J is a screenshot to a Quora search for "Which kind of DRM do Netflix, Comcast, [sic] Hulu+ use?" and Exhibit K is a screenshot of Widevine DRM's webpage, which is a different DRM service than PlayReady and is not mentioned in the Complaint.

In addition, to the extent Blue Spike argues that it alleges that Roku directs or controls its third-party content providers, such allegations fail because they are wholly conclusory and unsupported. The following is representative of Blue Spike's allegations regarding direction or control for each count of alleged infringement:

> Defendant has been and now is directly infringing by, among other things, practicing all the steps of the '246 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '246 Patent. Specifically, Defendant imports the Accused Products into the United States; offers for sale and sells the Accused Products via its own online store (*see* Exhibits A & B), has partnered with numerous resellers to offer for sale and sell the Accused Products in the United States (*see, e.g.*, Exhibits C & D), generates revenue from sales of the Accused Products to U.S. customers via such outlets (*see id.*), and has attended trade shows in the United States where it has demonstrated the Accused Products (*see, e.g.*, Exhibit G).

D.I, 1, ¶ 23 ('246 patent), *see also id.*, ¶¶ 32 ('561 patent), 41 ('295 patent). These paragraphs and cited exhibits lack any facts to support a plausible allegation that Roku directs or controls another party to infringe any limitation of the Secure Server patents.

Accordingly, the Complaint fails to sufficiently state a claim for direct patent infringement as to the Secure Server patents, and these claims should be dismissed.

   2.  <u>Blue Spike Fails to Allege that the Accused Products Perform Each Limitation of Each of the Asserted Claims of the Steganographic Cipher Patents (Counts 4-5)</u>

Similar to its allegations for the Secure Server patents, Blue Spike has not plead facts sufficient to state a claim for direct infringement for the Steganographic Cipher patents, as the Complaint does not allege, nor does Roku perform, each of the steps of the asserted claims. In particular, as shown in the tables below, there are several claim limitations for which Blue Spike provided <u>*no*</u> allegations.

In Count 4, Blue Spike alleges the Accused Products infringe claim 14 of the '116 patent by providing only the following conclusory and incomplete allegation:

Defendant's Accused Products allow playback of Netflix, Hulu+, HBO Go, Pandora, Spotify, and other streaming services. *See* Exhibit A. On information and belief, Netflix and Hulu+ use a digital rights management system called PlayReady—among others— which is a method for authenticating the transmission of information between two entities by using unique device IDs and cryptographic keys ***(conducting a trusted transactions [sic] between at least two parties [by using a] means for uniquely identifying information selected from the group consisting of a unique identification of one of the parties [and] a steganographic cipher for generating said unique identification information … governed by … a predetermined key)***. *See* Exhibit H at p. 4 ("PlayReady secures content by encrypting data files. … In order to decrypt these data files, a digital key is required."); Exhibit I ("We evaluated available and applicable ciphers and decided to primarily use the Advanced Encryption Standard (AES) cipher … The AES-GCM cipher algorithm encrypts and authenticates the message simultaneously—as opposed to AES-CBC, which requires an additional pass over the data to generate keyed-hash message authentication code (HMAC)"); *see also* Exhibits J & K

D.I. 1, ¶51 (emphasis in original).  As the following table illustrates, the Complaint contains no

allegations of infringement as to several limitations of claim 14:

| Claim 14 of the '116 Patent | Blue Spike's Allegations |
|---|---|
| A device for <u>conducting a trusted transaction between at least two parties</u> who have agreed to transact, comprising: | "conducting a trusted transactions [sic] between at least two parties" |
| <u>means for uniquely identifying information selected from the group consisting of a unique identification of one of the parties</u>, a unique identification of the transaction, a unique identification of value added information to be transacted, a unique identification of a value adding component; | "[by using a] means for uniquely identifying information selected from the group consisting of a unique identification of one of the parties" |
| <u>a steganographic cipher for generating said unique identification information</u>, wherein the steganographic cipher is <u>governed by</u> at least the following elements: <u>a predetermined key</u>, a predetermined message, and a predetermined carrier signal; and | "[and] a steganographic cipher for generating said unique identification information … governed by … a predetermined key" |
| a means for verifying an agreement to transact between the parties. | **No allegations that Accused Products perform this limitation.** |

Similarly, in Count 5, Blue Spike alleges the Accused Products infringe claim 36 of the

'011 patent by providing only the following conclusory and incomplete allegation:

Defendant's Accused Products allow playback of Netflix, Hulu+, HBO Go, Pandora, Spotify, and other streaming services. See Exhibit A. On information and belief, Netflix and Hulu+ use a digital rights management system called PlayReady—among others— which is a method for authenticating the transmission of information between two entities by using unique device IDs and cryptographic keys (*conducting trusted transactions between at least two parties [by using] a device identification code stored in the device ... a steganographically ciphered software application; wherein said steganographically ciphered software application has been subject to a steganographic cipher for serialization; wherein said device is configured to steganographically cipher both valueadded information and at least one value-added component associated with said value-added information; wherein said steganographic cipher receives said output data, steganographically ciphers said output data using a key, to define steganographically ciphered output data, and transmits said steganographically ciphered output data to said at least one input/output connection).  See* Exhibit H at p. 4 ("PlayReady secures content by encrypting data files. … In order to decrypt these data files, a digital key is required."); Exhibit I ("We evaluated available and applicable ciphers and decided to primarily use the Advanced Encryption Standard (AES) cipher … The AES-GCM cipher algorithm encrypts and authenticates the message simultaneously—as opposed to AESCBC, which requires an additional pass over the data to generate keyed-hash message authentication code (HMAC)"); *see also* Exhibits J & K.

D.I. 1, ¶ 60, (emphasis in original).  As the following table illustrates, the Complaint contains no

allegations of infringement as to several limitations of claim 36:

| Claims | Allegations |
|---|---|
| A device for <u>conducting trusted transactions between at least two parties</u>, comprising: | "conducting trusted transactions between at least two parties [by using]" |
| a steganographic cipher; | **No allegations that Accused Products perform this limitation.** |
| a controller for receiving input data or outputting output data; and | **No allegations that Accused Products perform this limitation.** |
| at least one input/output connection, | **No allegations that Accused Products perform this limitation.** |
| wherein the device has <u>a device identification code stored in the device</u>; | "a device identification code stored in the device" |
| <u>a steganographically ciphered software application</u>; | "a steganographically ciphered software application" |
| <u>wherein said steganographically ciphered software application has been subject to a steganographic cipher for serialization</u>; | "wherein said steganographically ciphered software application has been subject to a steganographic cipher for serialization" |
| <u>wherein said device is configured to steganographically cipher both value-added</u> | "wherein said device is configured to steganographically cipher both value added |

| Claims | Allegations |
|---|---|
| information and at least one value-added component associated with said value-added information; | information and at least one value-added component associated with said value added information" |
| wherein said steganographic cipher receives said output data, steganographically ciphers said output data using a key, to define steganographically ciphered output data, and transmits said steganographically ciphered output data to said at least one input/output connection. | **No allegations that Accused Products perform this limitation.** |

As with the Secure Server patents, for the limitations of the Steganographic Cipher patents that Blue Spike does address, the Complaint simply parrots the elements of the asserted claims and is wholly conclusory.  Importantly, the Complaint contains no factual support or inference suggesting that Roku's devices contain a steganographic cipher.  The only additional alleged factual support cited in the Complaint for the Steganographic Cipher patents beyond what was cited for the Secure Server patents is Exhibit I—which only discusses use of an AES cipher by Netflix, *not* a steganographic cipher.  Blue Spike provides no allegation as to why or how it could plausibly allege an AES cipher is a steganographic cipher.

The distinction between a steganographic cipher and other ciphers is important because the applicant defined a "steganographic cipher" as distinguishable from cryptography and watermarking during prosecution of the '011 patent:

> A watermark is, by definition, information embedded in a signal that is difficult to remove. ***A watermark does not imply steganographic ciphering.*** All it implies is information embedded in the signal that is difficult to remove.

> In contrast, by definition, a steganographic cipher uses a key and a message to hide data in a signal in a manner such that the existence of the message cannot be detected without the key. ("cannot", in the sense that it would [sic] computationally very intensive to detect the existence of the message without the key.) Note the reference in our specification, published paragraph [0117] to US patent 5,613,004 (stating "The computational complexity added by use of a steganographic cipher is discussed in the U.S. Pat. No. 5,613,004, the disclosure of which is incorporated by reference in its entirety ..."). US patent 5,613,004 notes in the paragraph preceding its Summary of Invention section that "The

15

> stega-cipher is so named because it uses the steganographic technique of hiding a message in multimedia content, in combination with multiple keys, a concept originating in cryptography.  However, ***instead of using the keys to encrypt the content, the stega-cipher uses these keys to locate the hidden message within the content***."
>
> Nothing in [U.S. 6,674,858 ("Kimura")] indicates that the data received by Kimura's STB contains a message the existence of which cannot be detected without the key.

U.S. Patent Application No. 11/512,701 ('011 patent), Feb. 18, 2011 Response to Office Action at 2 (Ex. 4).  Because none of the exhibits discuss steganographic ciphers and the Complaint contains no facts suggesting that Roku's accused devices contain a steganographic cipher, the Complaint contains no more than mere conclusory, unsupported allegations that Roku's devices contain a steganographic cipher.

Accordingly, the Complaint fails to sufficiently state a claim for direct patent infringement as to the asserted claims of the Steganographic Cipher patents, and the direct infringement claims for these patents should be dismissed.

### C.   Blue Spike Fails to Plead Facts that Plausibly Show that the Accused Roku Products Indirectly Infringe Any of the Asserted Patents

As an initial matter, because Blue Spike's allegations of induced and contributory infringement require that there be plausible allegations of direct infringement (and there are not), the allegations as to those claims are necessarily insufficient as well.  *See Modern Telecom*, 2017 WL 6524526, at \*4.   However, even assuming that Blue Spike's allegations of direct infringement are sufficient, Blue Spike's allegations for induced and contributory infringement do not meet the pleading requirements set forth in *Twombly* and *Iqbal*.

To sufficiently state a claim of induced infringement, the Complaint must contain facts sufficient to allow an inference that Roku "specifically intended [its] customers to infringe … and knew that the customer's acts constituted infringement."  *Aeritas, LLC v. Alaska Air Grp.*, Inc., 893 F. Supp. 2d 680, 683 (D. Del. 2012) (*citing In re Bill of Lading*, 681 F.3d 1323, 1339)

(Fed. Cir. 2012)); *Telecomm Innovations, LLC v. Ricoh Co., Ltd.*, 966 F. Supp. 2d 390, 394 (D. Del. 2013).  Additionally, Plaintiff's complaint must extend beyond the merely formulaic "makes, uses, offers to sell, or sells" language provided in 35 U.S.C. § 271 to sufficiently plead induced infringement.  *Id.* at 394 (citing *E.I. Du Pont de Nemours v. Heraeus Holding GmbH*, C.A. No. 11-773, 2012 WL 4511258, at *6 (D. Del. Sept. 28, 2012) (*citing In re Bill of Lading*, 681 F.3d at 1339, 1346)).

Blue Spike's allegations of induced and contributory infringement are insufficient because they only offer formulaic recitations paraphrasing 35 U.S.C. § 271 without meaningful or sufficient factual support and conclusory allegations of Roku's knowledge.  *See, e.g.*, D.I. 1, ¶¶ 5, 22, 25, 26, 28 (Count 1).  The only purported facts in the Complaint allegedly relating to induced and contributory infringement are two webpage printouts for the sale of Roku's products—an Amazon and Walmart search for "Roku."  (D.I. 1, Exs. C & D).  Nothing in these exhibits supports Blue Spike's conclusory allegations of induced and contributory infringement.

Accordingly, the Complaint fails to sufficiently state a claim for induced or contributory infringement and these claims should be dismissed.

### D.   Blue Spike Fails to Plead Facts that Plausibly Show that the Accused Products Willfully Infringe Any of the Asserted Patents

Because Blue Spike's allegations of willful infringement require that there be plausible allegations of direct infringement (and there are not), the allegations of willful infringement are necessarily insufficient as well.  *See Modern Telecom*, 2017 WL 6524526, at *4.  In addition, Blue Spike's allegations of willful infringement are further insufficient because the Complaint does not allege facts to plausibly infer that this is an "egregious case[] of misconduct beyond typical [patent] infringement." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1935 (2016).  The Complaint contains no allegations of wanton, malicious, or bad-faith conduct on

behalf of Roku (nor could it). *See id.*, 1932. Indeed, the mere allegation that Roku continues to make, use, or sell products after the alleged "notice" does not plausibly set forth facts showing how Roku's actions constitute an "egregious" case of willful infringement "beyond typical infringement." *Princeton Digital Image Corp. v. Ubisoft Entm't SA*, C.A. No. 13-335-LPS-CJB, 2016 WL 6594076, at \*11 (D. Del. Nov. 4, 2016) (dismissing willful infringement allegations because the complaint "does not sufficiently articulate how [Defendant's] actions during a short, three-month period of time [following assuming notice of the patent] amount to an 'egregious' case of infringement of the patent.").

Accordingly, the Complaint has failed to sufficiently state a claim for willful patent infringement, and the willful infringement claims should be dismissed.

## V.   CONCLUSION

Roku respectfully requests that the Court grant Roku's motion for judgment on the pleadings and dismiss Plaintiff's claims of direct infringement, induced infringement, contributory infringement, and willful infringement.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*

_____

Jack B. Blumenfeld (#1014)
Stephen J. Kraftschik (#5623)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
skraftschik@mnat.com

*Attorneys for Defendant*

OF COUNSEL:

Andrew Thomases
Carolyn L. Redding
ROPES & GRAY LLP
1900 University Avenue, Sixth Floor
East Palo Alto, CA  94303
(650) 617-4000

Michael Gershoni
ROPES & GRAY LLP
2099 Pennsylvania Avenue, NW
Washington, DC 20006-6807
(202) 508-4600

January 24, 2018

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on January 24, 2018, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on January 4, 2018, upon the following in the manner indicated:

Stamatios Stamoulis, Esquire                           *VIA ELECTRONIC MAIL*
Richard C. Weinblatt, Esquire
STAMOULIS & WEINBLATT LLC
Two Fox Point Centre
6 Denny Road, Suite 307
Wilmington, DE  19809
*Attorneys for Plaintiff*

Randall T. Garteiser, Esquire                           *VIA ELECTRONIC MAIL*
Christopher A. Honea, Esquire
Kirk J. Anderson, Esquire
GARTEISER HONEA, P.C.
119 West Ferguson Street
Tyler, TX  75702
*Attorneys for Plaintiff*

*/s/ Jack B. Blumenfeld*
_____
Jack B. Blumenfeld (#1014)